# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KIMBERLY LOCKHART CONRAD,**

    **Plaintiff,**

*vs*.                                                     **Civil Action No. 1:04CV195**
                                                           **(Judge W. Craig Broadwater)**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## AMENDED REPORT AND RECOMMENDATION/OPINION[1]

Kimberly Lockhart Conrad brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant" and sometimes "Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on cross motions for summary judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Standing Order No.6.

## I. Procedural History

Kimberly Lockhart Conrad ("Plaintiff") protectively filed an application for SSI and DIB on March 14, 2002, wherein she alleged disability since January 28, 2002, due to knee pain and leg swelling (R. 80-82, 99). The state agency denied Plaintiff's application initially and on

---

[1] The undersigned notes for the parties' benefit that the sole amendment to this R&R is the first sentence of section VI. Recommendation.

reconsideration (R. 60 67-68). Plaintiff requested a hearing, which Administrative Law Judge Jay Levine ("ALJ") held on April 25, 2003, in Bridgeport, West Virginia., and at which Plaintiff, represented by counsel, Michael Miskowiec, and Tim Mahler, a vocational expert ("VE") testified (R. 458-499). On June 17, 2003, the ALJ entered a decision finding Plaintiff was not disabled and that she could perform a significant range of sedentary work (R. 34-43). On August 3, 2004, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 7-10).

## II. Statement of Facts

The issues in this case make it unnecessary to recite the record in full. The undersigned will, therefore, discuss the facts as necessary as to each issue.

## III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, ALJ Levine made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The claimant meets some of the requirements for listing 12.04. However, as the claimant has only "None", [sic] "Mild", [sic] "Moderate", [sic] and "None" for degree [sic] of limitation of the functional "B" requirement, she does not meet the "B" requirements and, thus does not meet the requirements of listing 12.04. The record did not contain any evidence of the presence of "C" criteria.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the following residual functional capacity: sedentary work with a sit/stand option that does not require any climbing. Employment cannot expose the claimant to unprotected heights or dangerous machinery and should be in a clean air environment. Work cannot require stooping or kneeling and cannot expose the claimant to temperature extremes. The claimant is restricted to low stress work that deals primarily with things rather than people. Employment should also be of the type that contact with supervisors and coworkers is limited. The vocational expert also testified there was no conflict with these job listings with the *Dictionary of Occupational Titles* and the claimant's limitations and the vocational expert's experience with the sit/stand option. (SSR 00-4p).

8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "high school education" (20 CFR §§ 1564 and 416.964).

11. The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as an addresser, with 100,000 jobs in the national economy and 250 jobs in the regional economy; as a surveillance system monitor, with 15,000 jobs in the national economy and 50 jobs in the regional economy; as a stock/inventory clerk at a desk, with 30,000 jobs in the national economy and 150 jobs in the regional economy; and as an inspector/checker, with 37,000 jobs in the national economy and 150 jobs in the regional economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at

any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)) (R. 41-43).

## IV. Discussion

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Contentions of the Parties

The Plaintiff contends:

1. The Administrative Law Judge failed to make a credibility finding concerning Plaintiff's migraine headaches; and

2. The testimony of the vocational expert is not sufficient to meet the Commissioner's burden of proving there is other work Plaintiff can do given her age, education, work

4

experience and residual functional capacity.

The Commissioner contends:

1. The ALJ's credibility finding included consideration of Plaintiff's migraine allegations; and

2. The ALJ could rely on the Vocational Expert's testimony.

### C. Credibility

Plaintiff contends the ALJ failed to make a credibility finding concerning her migraine headaches. Defendant contends the ALJ's credibility finding included consideration of Plaintiff's migraine headache allegations. The Fourth Circuit has developed a two-step process for determining whether a person is disabled by pain or other symptoms as announced in *Craig v. Chater*, 76 F. 3d 585 (4th Cir. 1996). Step one is as follows:

> 1) For pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Cf. Jenkins*, 906 F.2d at 108 (explaining that 42 U.S.C. § 423(d)(5)(A) requires "objective medical evidence of some condition that could reasonably be expected to produce the pain alleged"). *Foster*, 780 F.2d at 1129 . . . .

*Craig,* supra, at 594.

The ALJ found the following relative to Plaintiff's migraine headaches:

Although not alleged, there is sufficient information to find that the claimant is also suffering from migraine headaches, which will limit her ability to perform work.

The medical evidence indicates that the claimant has bilateral osteoarthritis of the knees, asthma, depression, migraine headaches and obesity, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. . . . Looking at the claimant's migraine headaches under listing 11.00, the

5

claimant does not have the loss of functioning required by the impairment listed here. Furthermore, the claimant's medication, over the counter Excedrin Migraine, appears to work or she will take Paxil and "another pill" to help control the pain. The claimant's headache impairment does not reach the level required of the listed impairments (R. 37).

After finding Plaintiff had severe impairments (including migraine headaches) which would limit her ability to perform work, the ALJ, in conformance with step one of the pain analysis as mandated in *Craig v. Chater*, found the following: "While the undersigned has no doubt that the claimant experiences pain from the ostioarthritis in her knees and that her asthma occasionally causes her difficulty, the level of pain alleged and the difficulties associated with her impairments are not well supported by the medical evidence of record. Therefore, the undersigned has found the claimant to only be generally credible" (R. 39).

As noted above, the ALJ found Plaintiff's migraine headaches did not meet Listing 11.00, Plaintiff had limited ability to perform work because she suffered from migraine headaches, medical evidence supported Plaintiff's assertion that she suffered from migraine headaches, and these migraine headaches were severe within the meaning of the Regulations; however, the ALJ failed to include Plaintiff's migraine headache impairment in the threshold question and failed to determine whether objective evidence of record supported Plaintiff's claim that migraine headaches could reasonably be expected to produce "the actual pain, in the amount and degree, alleged by the claimant" as required by the Fourth Circuit. *Craig*, supra, at 587, 594, 596. The *Craig* Court remanded that case to the ALJ with explicit instructions that the ALJ "determine whether Craig has an objectively identifiable medical impairment that could reasonable cause the pain of which she complains." Id. at 596. The ALJ in the instant case must do the same. The ALJ has an obligation to determine, at step one in the two-step pain analysis, whether Plaintiff has met her threshold obligation of showing, by objective medical evidence, that she has medical impairments reasonably

likely to cause the pain claimed. In choosing to name some, and not others, of Plaintiff's severe impairments, the ALJ's threshold determination was not complete. The undersigned, therefore, finds the ALJ erred in failing to properly establish a threshold, at step-one of the pain analysis requirement, that Plaintiff's migraine headaches, a condition found to be a severe impairment by the ALJ, could, or could not, cause the symptoms of which she complained. Because of this error, the undersigned finds the ALJ's decision relative to Plaintiff's credibility was not supported by substantial evidence.

> The Fourth Circuit requires the following at step two of the pain analysis:
>
> 2) It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, *that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated*, *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.;* any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.). *See* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *See* 20 C.F.R. § 416.929(c)(3) & 404.1529(c)(3). (Emphasis added).

*Craig*, supra, at 595.

Since the ALJ failed to expressly consider the threshold question of whether Plaintiff had demonstrated, by objective medical evidence, that her migraine headaches were capable of causing the degree and type of pain she alleged at step one of the pain analysis, he did not thoroughly address the impairment at step two of the analysis; thus, his evaluation at step two was flawed. The ALJ did not assess all of Plaintiff's statements about or consider all available evidence relative to her migraine headaches in order to evaluate the extent to which Plaintiff's pain therefrom affected

7

her ability to work as required in *Craig*. Id. at 595. In assessing Plaintiff's testimony offered by her at the administrative hearing, the ALJ discussed and considered Plaintiff's statements relative to her inability to walk, stand, sit, and drive and her statements relative to her limitations caused by asthma, bladder control, and depression (R. 36). The ALJ found, in his decision, that Plaintiff did "not have the loss of functioning required by the impairments listed [in 11.00]" relative to her migraine headaches because she testified that her "medication, over the counter Excedrin Migraine, appears to work or she will take Paxil and 'another pill' to help control the pain" (R. 37, 477-479). Plaintiff's testimony was not exclusive, however, as to how she medicated her migraine headaches; she also testified about the limitations she experienced due to the frequency of the migraine headaches and the effects of the medication. Plaintiff testified that her migraine headaches occurred "every other day, sometimes daily" and that a headache lasted "about an hour or so . . . [or] "all day" (R. 477). Plaintiff stated her treating the migraine headaches with Excedrin Migraine "sometimes" alleviated the pain and "sometimes" did not (R. 478). Plaintiff testified that fifty (50) percent of the time, the first dose of Excedrin Migraine medication did not alleviate her headache pain and she took a second dose of Excedrin Migraine, combined with a dose of Paxil and Ativan, and slept for "two to three hours" (R. 478, 480). This testimony was relevant as to the intensity and persistence of Plaintiff's pain, and the ALJ failed to analyze Plaintiff's credibility as to this testimony in his decision as required by *Craig*.

Additionally, the ALJ did not evaluate "all the available evidence" of record as it pertained to Plaintiff's migraine headaches. *Craig*, supra, at 595. Defendant, in her brief, asserted that "Plaintiff's argument would be more convincing if there were any objective medical evidence that Plaintiff had chronic migraine headaches, or any consistent treatment history for migraines."

8

Defendant then listed three examples of objective medical evidence of record – 1) a MRI of Plaintiff's brain, 2) Plaintiff's use of non-prescription of medication for migraine headaches, and 3) Plaintiff's hospitalization for migraine headaches. (Defendant's brief at p. 7). This evidence, although not voluminous, constituted objective medical evidence that the ALJ was obligated to weigh at step-two of his credibility analysis of Plaintiff because, according to the language in *Craig*, he must evaluate "all the available evidence." Id. at 595. The ALJ did not consider Dr. Ahmed Husari's September 6, 2001, prescription of Midrin for Plaintiff's migraine headaches; Dr. Ahmed Husari's October 11, 2001, prescription of Midrin and Paxil for migraine headaches; Plaintiff's reports of frequent migraine headaches to Morgan D. Morgan during a Disability Determination Evaluation and Morgan's diagnostic impression for migraine headaches at Axis III of Plaintiff's evaluation; Dr. Alvaro R. Gutierrez's diagnosis of chronic migraines when Plaintiff was admitted to Monongalia General Hospital on May 12, 2003; and the results of a May 13, 2003, MRI of Plaintiff's brain for contractible severe persistent headaches, which was unremarkable (R. 217, 218, 284, 288, 389, 423). The undersigned, therefore, finds the ALJ erred in evaluating the intensity and persistence of the Plaintiff's pain caused by migraine headaches and the extent to which it affected her ability to work because he did not take into account the entirety of Plaintiff's statements about her pain or all available evidence. Because of this error, the undersigned finds the ALJ's decision relative to Plaintiff's credibility was not supported by substantial evidence.

### D. Vocational Expert's Testimony

Plaintiff contends the testimony of the vocational expert is not sufficient to meet the Commissioner's burden of proving there is other work Plaintiff could do given her age, education, work experience and residual functional capacity. Defendant contends the ALJ could rely on the

Vocational Expert's testimony.

> The ALJ found Plaintiff's residual functional capacity was as follows:
>
> . . . sedentary work with a sit/stand option that does not require any climbing. Employment cannot expose the claimant to unprotected heights or dangerous machinery and should be in a clean air environment. Work cannot require stooping or kneeling and cannot expose the claimant to temperature extremes. The claimant is restricted to low stress work that deals primarily with things rather than people. Employment should also be of the type that contact with supervisors and coworkers is limited (R. 39-40).

The ALJ further found Plaintiff could not return to her past relevant work (R. 40).

> Based on Plaintiff's RFC, the ALJ asked the following hypothetical question of the ALJ:
>
> Assume a hypothetical individual the claimant's age, education, and prior work experience. Assume this person is restricted to a sedentary range of work. This person requires a sit/stand option. No climbing, no work at unprotected heights, no work around dangerous machinery. Needs a relatively clean air environment. Also this person should not stoop, just very infrequent – no kneeling, no temperature extremes. . . . Also this person is restricted to low stress work, which in this case means the person can work primarily with things. It doesn't preclude all contact with the public or fellow employees or supervisors, but the person should not be required to have to respond to the repeated requests for information, from any of those groups. Is there work in the national and regional economy such a person could perform? (R. 492).

The ALJ clarified the hypothetical was for "no stooping" when asked to do so by Plaintiff's lawyer (R. 493). The VE responded that "there are jobs that would comply with those limitations at the sedentary level. Some examples I could offer would be addressers, there are 250 in the local labor market, and 100,000 in the nation. There are surveillance system monitors, 50 local and 15,000 nation. There are routine stocker inventory clerks, sedentary. Not doing physical inventory just recording at a desk, 150 local, 30,000 in the nation. And inspector checkers of small products, 150 local, 37,000 in the nation" (R. 493). The ALJ asked the VE if the jobs he listed were consistent with the Dictionary of Occupational Titles, to which the VE responded in the affirmative (R. 493).

10

Subsequent to the hypothetical question being asked by the ALJ and answered by the VE, the following question/answer exchange occurred at the administrative hearing between Plaintiff's lawyer and the VE:

> Attorney: ". . . in the first hypothetical the Judge asked you to identify jobs at the sedentary level. . . . And then he further restricted that. Would it be your opinion that the occupational base for sedentary, unskilled work was substantially eroded with given the other limitations that were put in that hypothetical?"
>
> VE: "Yes, it's not the full range of sedentary. It was eroded."
>
> Attorney: "Was it substantially eroded, in light of the no stooping, and sit/stand option?"
>
> VE: "I would not say it's substantial."
>
> Attorney: "What percentage of the sedentary, unskilled occupational base was available in response to that?"
>
> VE: "With a sit/stand option and no stooping, just to be conservative, I would say 50 to 60 percent."
>
> Attorney: "Were still available, 50 to 60 percent?"
>
> VE: "Yes" (R. 495-96).

Plaintiff asserted, in her brief, that this case should be remanded to address "whether the occupational base for sedentary work is significantly eroded" because the ALJ "did not address whether the complete inability to stoop so significantly erodes the sedentary occupational base that [Plaintiff] should be found disabled" and because the ALJ "should clarify whether the removal of at least 40% of the sedentary occupational base is 'significant' in terms of Social Security Ruling 96-9p." (Plaintiff's brief at p. 13). The undersigned agrees.

SSR 96-9p states the following:

An ability to stoop occasionally; i.e., from very little up to one-third of the time, is

11

> required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply. . . . Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

As noted above, the VE testified that the availability to Plaintiff of fifty (50) to sixty (60) percent of the jobs listed by him because she could not stoop was not a substantial erosion of the sedentary occupational base. This is not supported by the language of SSR 96-9p, which clearly states that such a limitation was significant. The ALJ, however, relied on this testimony.

SSR 00-4p, in part, outlines the standards under which the ALJ should consult with and rely on the occupational evidence provided by a VE as follows:

> The regulations at 20 CFR 404.1566(d) and 416.966(d) provide that we will take administrative notice of "reliable job information" available from various publications, including the DOT. In addition, as provided in 20 CFR 404.1566(e) and 416.966(3), we use VEs and VSs as sources of occupational evidence in certain cases. . . .
>
> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. . . . We may also use VEs and VSs at these steps to resolve complex vocational issues. . . . We most often use VEs to provide evidence at a hearing before an ALJ. . . .
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; . . .

In accordance with SSR 00-4p, after confirming the VE's testimony conformed with the information contained in the DOT, the ALJ, in his decision, relied on the VE's testimony relative to the number of jobs available in the regional and national economies to Plaintiff based on her

12

limitations; however, he did so without taking into consideration the VE's testimony at the administrative hearing that the sedentary occupational base was eroded by forty (40) to fifty (50) percent because of Plaintiff's inability to stoop (R. 495-96). In his decision, the ALJ found, based on the testimony of the VE at the administrative hearing, there were 250 addresser jobs in the regional economy and 100,000 jobs in the national economy; 50 surveillance system monitor jobs in the regional economy and 15,000 jobs in the national economy; 150 stock/inventory desk clerk jobs in the regional economy and 30,000 jobs in the national economy; and 150 checker of small products jobs in the regional economy and 37,000 jobs in the national economy available to Plaintiff (R. 41). Consequently, the ALJ found that work existed "in significant numbers" that Plaintiff could perform (R. 41). As the VE's testimony reflected, however, only fifty (50) to sixty (60) percent of these job totals were available to Plaintiff because she could not stoop (R. 495-96). The ALJ did not consider this reduction in formulating his decision as to whether Plaintiff was "capable of making a successful adjustment to work"; the total number of jobs available to the Plaintiff as quoted by the ALJ were the numbers quoted by the VE prior to his stating that the sedentary occupational base would be eroded because Plaintiff could not stoop. Additionally, the ALJ did not make a determination as to whether such a reduction "would significantly erode the . . . sedentary occupational base"(R. 41). SSR 96-9p. He relied on the VE's testimony that a forty (40) to fifty (50) percent erosion to the sedentary occupational base because of no stooping was not significant, testimony that conflicted with SSR- 96-9p.

The undersigned finds the following: 1) because the ALJ relied on the VE's testimony as to the number of sedentary jobs available to Plaintiff prior to the VE qualifying his answer that such job availability would be reduced by forty (40) to fifty (50) percent due to erosion caused by no stooping and 2) because the ALJ did not make a finding as to whether the erosion of the sedentary

13

occupational base by forty (40) to fifty (50) percent was substantial, the ALJ's finding that Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers" was not supported by substantial evidence of record (R. 41).

In addition to the two contentions listed by Plaintiff in her Memorandum in Support of Motion for Summary Judgment, Plaintiff offered new and material evidence which she opined was appropriate for consideration by the Commissioner on remand. Plaintiff proffered a 1) Disability Determination and Transmittal form, dated March 30, 2005, which noted Plaintiff was found disabled commencing June 18, 2003, one day after the ALJ's decision in the instant case (Attachment A) and a 2) Regulation Basis Codes, on which was listed the code which defined the reasons for Plaintiff having been awarded her claim on June 18, 2003 (Attachment B). (Plaintiff's reply brief at p. 3). Because the undersigned, in the subsequent paragraph, will recommend remand of this matter to the Commissioner, the undersigned will not address the merit of the evidence but finds it is appropriate for the Commissioner to consider the proffered evidence. On remand, therefore, both parties will be permitted to submit any new evidence they determine is relevant to the issues and time frame of this case.

## VI.  RECOMMENDATION

For the reasons herein stated, I find substantial evidence does not support the Commissioner's decision denying the Plaintiff's applications for DIB and for SSI. I accordingly recommend Defendant's Motion for Summary Judgment be **DENIED** and the Plaintiff's Motion for Summary Judgment be **GRANTED** and this action be **REMANDED** to the Commissioner for further action in accordance with this Report and Recommendation/Opinion.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 28th day of October, 2005.

*/s/ John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE